STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant, *v.* HANOVER DEVELOPMENT CORPORATION *et al.*, Defendants-Appellees.

Second District   No. 78-431

Opinion filed June 18, 1979.

NASH, J., dissenting.

John M. Berent, of Wheaton, Michael W. Ford, Terry A. McIlroy, and Stephen Pugh, all of Chicago, for appellant.

R. Terence Kalina, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This is an interlocutory appeal from the order of the Circuit Court of Du Page County granting the defendants' petition for arbitration and denying the plaintiff's motion to vacate that order. The issue presented for review is whether the trial court correctly found that all of the issues raised by the plaintiff's complaint are governed by the arbitration provision of the limited partnership agreement (article XIV) between the plaintiff, State Farm Mutual Automobile Insurance Company, hereafter State Farm, and

the defendant Hanover Development Corporation. In general this article provides that all disputes and questions between the partners shall be resolved by arbitration.

By an agreement signed on July 10, 1970, the parties formed a limited partnership under the name of Northland Associates. State Farm was to be a limited partner and Hanover Development a general partner to develop and maintain certain real property owned by State Farm Life Insurance Company. The land was leased from State Farm Life by the partnership and developed into a shopping center. State Farm's complaint alleged that Hanover had wrongfully paid over to itself in excess of $212,000 from partnership funds, failed to pay in a timely manner the 1976 real estate taxes, and failed to file with State Farm operating statements as required by the agreement. State Farm sought a termination, dissolution and winding up of the partnership, an accounting and judgment for its alleged losses.

In response to this complaint, Hanover Development petitioned the court below for an order to arbitrate the dispute. The trial court entered an order June 28, 1978, granting defendants' petition for arbitration and denying the plaintiff's motion to vacate that order, and it is from this order that the issues are before us in this interlocutory appeal. Upon examining the record, relevant statutes and the limited partnership agreement and reviewing the arguments of the parties we are of the opinion that the order of the Circuit Court of Du Page County should be affirmed.

Article XIV of the parties' limited partnership agreement calls for arbitration of:

> "All disputes and questions whatsoever which shall arise either during the Partnership or afterwards, between the partners or their respective representatives, or between any of the partners and the representatives of any other partner, touching these presents, or the construction or application thereof, or on any account, valuation, or division of assets, debits, or liabilities to be made hereunder, or any act or omission of any partner, or any other matter in any way relating to the Partnership business or the affairs of the Partnership, or the rights, duties, and liabilities of any person hereunder, * * *."

Section 1 of the Uniform Arbitration Act (Ill. Rev. Stat. 1977, ch. 10, par. 101) makes agreements to arbitrate "valid, enforceable, and irrevocable * * *."

■■ In the case of *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25, this court developed a three category test for determining if a commercial dispute is arbitrable:

> 1. if the dispute is clearly within the arbitration clause, a court should order arbitration;

2. if the dispute is clearly not within the clause "then there is no agreement to arbitrate, and the court should deny arbitration"; and,

3. where the scope of an agreement to arbitrate "is reasonably in doubt, the issue of arbitrability should be initially determined by the arbitrators, * * *." (68 Ill. App. 2d 145, 154-55, 215 N.E.2d 30.) The present dispute is in the first category. The parties have not only agreed to arbitrate disputes over the construction and application of the contract itself, but also "any act or omission of any partner, or any other matter in any way relating to the partnership business or the affairs of the partnership, or the rights, duties, and liabilities of any person hereunder." Such broad language clearly encompasses both the alleged misconduct of the defendants and State Farm's act of seeking dissolution. Arbitration is governed by agreement. (Ill. Rev. Stat. 1977, ch. 10, par. 102(a).) Here the parties have, by contract, bound themselves to arbitrate all disputes without limitation.

This is not a case like *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149, where the parties agreed to arbitrate only a limited number of specified issues. The instant case is also distinguishable from *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 248 N.E.2d 289, and *Silver Cross Hospital v. S. N. Nielsen Co.* (1972), 8 Ill. App. 3d 1000, 291 N.E.2d 247, in that the arbitration agreement in those cases was limited to disputes "arising in connection with" the contract. In the latter two cases the courts found that the specific disputes in question were not governed by the contract. Here, however, the agreement goes further to include not only disagreements over the meaning of the contract, but also any and all acts of a partner relating to the partnership. (For a discussion of this distinction, see Kalevitch, *Arbitrability: The Uniform Arbitration Act in Illinois*, 4 Loy. Chi. L.J. 23, 26, 30 (1973).)

State Farm cites the case of *Goldmann Trust v. Goldmann* (1965), 26 Wis. 2d 141, 131 N.W.2d 902, wherein the arbitration clause in dispute was virtually identical to that in the case at bar. The dispute in *Goldmann* concerned an attempt by one partner to dismiss a permanent partnership employee. A specific provision of the partnership agreement required mutual consent of the partners to dismiss a permanent employee. The partner seeking to dismiss the employee sought arbitration of the question of dismissal rights. The Wisconsin Supreme Court, by a four-to-three vote, refused to uphold an order to arbitrate. The court found that the existence of a specific provision requiring mutual consent made the contractual intent so clear that there was nothing to arbitrate. In the present case there is no specific provision controlling the dispute, and thus *Goldmann* is distinguishable.

State Farm also argues that article XI of the agreement makes remedies "alternate and cumulative" and thus a partner has unfettered access to judicial adjudication. The full text of article XI is as follows:

"In the event either partner shall fail to make the required contributions referred to in Article V hereof within thirty (30) days after demand therefore, said partner may be expelled from the Partnership and said partner shall receive no further payments nor shall he be entitled to any share of the profits unless and until said contribution shall be made in full together with interest thereon at the then prevailing rate. The remedy provided for herein shall be alternative and cumulative and all other remedies which may be provided for by law shall not be construed as restricting either partner from commencing an action or taking such steps as it may desire to enforce the payment of obligations due to the Partnership."

A full reading of this article shows that its provisions are expressly limited to a failure to make a required contribution referred to in article V.[1] These contributions were the initial contributions to be made when the leasehold was established and construction begun. State Farm's complaint makes no mention of any failure to make these initial contributions and thus article XI is not applicable to the resolution of the disputes raised in State Farm's complaint. Indeed, article XI far from being a limitation on arbitration of the present dispute, supports a deferral to arbitration. The failure to make an initial contribution alone was singled out as being subject to alternative and cumulative remedies. If the partners had intended to make the remedies available for dissolution to be "alternative and cumulative" they could have expressly done so.

Along the same line, State Farm argues that because article VIII of the agreement calls for immediate dissolution of the partnership upon certain specified events, the arbitration clause could not have been meant to be all inclusive. However, the events specified in article VIII all relate to the insolvency of the partnership and are not the basis of the present dispute between the parties as there is no claim that the partnership is insolvent. Therefore we conclude that the present dispute is clearly within the scope of the arbitration clause.

Beyond the issue of the scope of the arbitration clause, State Farm raises two other arguments to support its contention that arbitration is improper. First it points out that under the express language of section 1 of the Uniform Arbitration Act courts will not compel arbitration where the agreement to arbitrate is itself subject to revocation. Section 1 provides:

---

[1] The reference in article XI to article V is apparently an error as contributions are discussed in articles VI and possibly VII of the agreement.

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration in a controversy thereafter arising between the parties is valid, enforceable, and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract." (Ill. Rev. Stat. 1975, ch. 10, par. 101.)

Unfortunately there is a dearth of case law concerning the Act's use of the term "revocation." The historical context of section 1 is that under the common law while arbitration awards would be judicially enforced, an executory agreement to arbitrate future disputes was not enforceable. (*Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.* (1974), 21 Md. App. 307, 320 A.2d 558, 564.) The Uniform Arbitration Act modified the common law and made agreements to arbitrate irrevocable except on such grounds as exist for the revocation of any contract. Under the principles of contract law, the term "revocation" refers to an offer that has not yet been accepted. (1 Williston on Contracts §55 (3d ed. 1957).) The partnership agreement in the instant case is clearly no longer in the offer and acceptance stage. This agreement is no longer executory and has in many instances been fully performed as property was leased, developed, and managed, loans were made, and rents were collected.

As the cases cited by State Farm indicate, a more likely meaning of the term "revocation" as used in the Uniform Arbitration Act is that courts should not require parties to arbitrate disputes under agreements made voidable or unenforceable because of duress or unconscionability. (*Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 248 N.E.2d 289; *Exercycle Corp. v. Maratta* (1961), 9 N.Y.2d 329, 214 N.Y.S.2d 353, 174 N.E.2d 463; *Bunge Corp. v. Williams* (1977), 45 Ill. App. 3d 359, 359 N.E.2d 844.) Here, however there is no allegation of fraud or duress in the formation of the partnership agreement that would make a contract unenforceable. State Farm is not seeking to revoke an offer or void a contract but to dissolve and wind up a partnership. The saving clause of section 1 is simply not applicable under the facts of this case.

Finally, State Farm argues that dissolution of a partnership, as a statutorily created remedy (Ill. Rev. Stat. 1977, ch. 106½, par. 32), is not subject to arbitration. The Uniform Partnership Act (Ill. Rev. Stat. 1977, ch. 106½, pars. 1-43) and the Uniform Limited Partnership Act (Ill. Rev. Stat. 1977, ch. 106½, pars. 44-73) are deemed part of the parties' partnership agreement to the same extent as though expressly referred to or incorporated in the contract itself. (*Goble v. Central Security Mutual Insurance Co.* (1970), 125 Ill. App. 2d 298, 260 N.E.2d 860.) This is equally true as to the Uniform Arbitration Act which, as indicated above, makes private agreements to arbitrate subject to judicial enforcement. While

there appear to be no Illinois cases on the dissolution issue, the courts of other States have allowed parties to include dissolution as a subject for arbitration. In *Lowengrub v. Meislin* (1954), 376 Pa. 463, 103 A.2d 405, the Supreme Court of Pennsylvania held that under a broad arbitration clause an action brought for an accounting and dissolution should be stayed pending submission of a dispute to arbitration. State Farm attempted to distinguish *Lowengrub* on the basis that the arbitration agreement there made specific reference to dissolution. However, it is clear that it was the generally broad scope of the arbitration clause, and not any specific reference to dissolution, that was the basis of the court's decision. 376 Pa. 463, 465-66, 103 A.2d 405, 406.

In the more recent case of *Waddell v. Shriber* (1975), 465 Pa. 20, 348 A.2d 96, the Pennsylvania Supreme Court directly confronted the contention that a dissolution provision of the Uniform Partnership Act precluded arbitration of the dissolution issue: "The courts' role in the winding up of a partnership is to provide an impartial tribunal to resolve disputes which cannot be settled by private means. Arbitration serves this function. Thus, when the partners have validly agreed to arbitrate disputes arising from the winding up of a partnership, a partner attempting to avoid arbitration cannot meet the statutory requirement of 'cause shown' to justify court intervention prior to arbitration." (465 Pa. 20, 31, 348 A.2d 96, 102.) The *Waddell* court further held that when the parties have agreed to arbitrate any dispute arising from their relationship, this includes disputes over the termination of the relationship. 465 Pa. 20, 30, 348 A.2d 96, 101.

State Farm also cites the New York case of *Bercu v. Levinson* (1946), 270 App. Div. 537, 61 N.Y.S.2d 116, *aff'd* (1947), 296 N.Y. 866, 72 N.E.2d 607, for the proposition that dissolution of a partnership must proceed according to law and is, therefore, not subject to arbitration. However, *Bercu* is clearly distinguishable because the issue there did not concern "conduct of the partnership" but merely the routine addition of a new partner. In essence, the court found no real dispute and hence nothing for the arbitrator to decide. In the instant case, however, the alleged misconduct of the partnership is in dispute and therefore an issue exists for the arbitrator to decide. Similarly the case of *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 343 N.E.2d 473, is not controlling as that case involved the delegation of a specific statutorily imposed power by a *public* board of trustess. Here, on the other hand, we have private parties agreeing to arbitrate a private dispute. Such an agreement cannot be said to be invalid on public policy grounds; indeed, agreements of this type further the public policy of encouraging the private settlement of disputes. *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 156-57, 215 N.E.2d 25, 31.

■■ State Farm is not being denied a statutory right to dissolution. The

parties have voluntarily agreed to arbitrate any and all partnership disputes. Moreover, section 11 of the Uniform Arbitration Act (Ill. Rev. Stat. 1977, ch. 10, par. 111) provides that a party may petition the court for confirmation of an arbitration award and section 14 (Ill. Rev. Stat. 1977, ch. 10, par. 114) provides for a judgment on this confirmation. This would permit the issuance by the trial court of a formal decree of dissolution following arbitration as provided for in the Uniform Partnership Act. Section 12 (Ill. Rev. Stat. 1977, ch. 10, par. 112) gives the parties access to the courts to seek to vacate an award for certain specified grounds. We fail to see how State Farm is thereby denied the statutory relief to which it is entitled.

We conclude that all the issues raised by State Farm's complaint, including the request for dissolution, are disputes within the scope of the instant arbitration clause of the limited partnership agreement. The agreement to arbitrate is not revocable. The order of the Circuit Court of Du Page County to arbitrate the issues raised in the plaintiff's complaint is affirmed.

Affirmed.

GUILD, P. J., concurs.

Mr. JUSTICE NASH, dissenting:

I respectfully dissent. While partners who wish to do so may by their contract agree that questions of termination, dissolution and winding up will be determined by arbitration rather than pursuant to the partnership statutes, these parties did not agree to do so and we should not impose that requirement upon them.

The arbitration clause here is broad but does not suggest that the parties intended the Uniform Arbitration Act to apply to the exclusion of the partnership statutes, and such preemption should not be mandated without a clear contractual provision to support it. The majority agree that by law the partnership statutes are deemed to be part of a partnership agreement (*Goble v. Central Security Mutual Insurance Co.* (1970), 125 Ill. App. 2d 298, 260 N.E.2d 860), but then find the parties to this contract intended otherwise. The only authority cited for this far-reaching conclusion is *Lowengrub v. Meislin* (1954), 376 Pa. 463, 103 A.2d 405, in which dissolution of a partnership was submitted to arbitration. While the majority states "it is clear that it was the generally broad scope of the arbitration clause, and not any specific reference to dissolution, that was the basis of the court's decision," the partnership agreement in that case provided as follows:

"In the event any dispute should arise concerning any of the terms, covenants or conditions of this agreement, or with respect to

the enforcement thereof, *or with respect to any dissolution or liquidation of the partnership*, or with respect to any matter affecting the operation and conduct of the business of the co-partnership, such dispute shall be disposed of by arbitration \* \* \*." (Emphasis added.) (376 Pa. 463, 464-65, 103 A.2d 405, 406.)

It seems to me that the court in *Lowengrub* simply enforced the plain terms of an agreement the parties had made and did not by construction or implication seek to extend its arbitration provisions. I note also that in *Waddell v. Shriber* (1975), 465 Pa. 20, 348 A.2d 96, the Supreme Court of Pennsylvania again considered that issue and again determined that a partnership will be dissolved by arbitration *when the contract so provides. Lowengrub* and *Waddell* appear to be the only reported cases from any jurisdiction, including Illinois, where the question of dissolution of a partnership by arbitration has been directly considered.

In my view, our supreme court in *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149, stated the principles which should guide us in this case. The court held that parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate and that their arbitration agreement will not be extended by either construction or implication. (41 Ill. 2d 91, 94, 242 N.E.2d 149, 151.) The appellate court has heretofore consistently followed *Flood* and declined to impose upon parties to an arbitration agreement provisions which they did not clearly intend when making the contract. See *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 248 N.E.2d 289; *Silver Cross Hospital v. S. N. Nielsen Co.* (1972), 8 Ill. App. 3d 1000, 291 N.E.2d 247; *Donoghue v. Kohlmeyer & Co.* (1978), 63 Ill. App. 3d 979, 380 N.E.2d 1003.

In this case the order from which plaintiff appeals found that all disputed matters arising from the partnership agreement are subject to arbitration, necessarily including whether the partnership may be terminated and dissolved and, if so, the winding up of its affairs. As the determinations of an arbitrator, acting within his powers, are final and not reviewable by any court absent fraud, impartiality or misconduct by the arbitrator (*Fredman Bros. Furniture Co. v. Retail Store Employees Union, Local 575* (1979), 69 Ill. App. 3d 518, 388 N.E.2d 849), we should not lightly decide the parties intended that procedure be followed. We must, of course, carry out their intention when that may be ascertained by the plain terms of their agreement.

Having said that I do not agree with the broad sweep of the majority opinion which has removed all consideration of the provisions of the partnership statutes from this case, that is not to say there are no matters between these parties which are subject to arbitration; here, however, the trial court did not differentiate between arbitrable and nonarbitrable issues

which may exist. A similar question was recently presented to this court in *Farris v. Hedgepeth* (1978), 58 Ill. App. 3d 1040, 374 N.E.2d 1086, and we there directed the trial court to conduct a hearing to make that determination. I would find that the arbitration clause of the contract did not extend to the exclusion of the provisions of the partnership statutes and would remand for a determination of arbitrable issues.